CUTRER, Judge.
Elda Jeanmard and her husband brought suit against Sears, Roebuck and Company (Sears) and its insurer, Allstate Insurance Company (Allstate), for damages due to personal injuries incurred by Mrs. Jean-mard as a result of a one-vehicle accident. Sears had performed repairs on the car the day of the accident and as she was proceeding to her home, the hood came open causing Mrs. Jeanmard to lose control of the car. She sustained injuries in the resulting accident.
*578 After a non-jury trial the court rendered judgment in favor of the plaintiffs. The plaintiffs appealed the adequacy of the award and the refusal of the trial court to grant a new trial. We affirm.
FACTS
The trial court, in written reasons for judgment, set forth the facts surrounding the occurrence of the accident as follows:
“This suit is the result of a single car accident on September 18, 1978, on U.S. Highway 167. Plaintiff had earlier in the day left her car, a 1971 Cadillac Eldorado, with Sears, Roebuck & Company to have the shock absorbers replaced and the engine hoses inspected. At approximately 5:00 P.M., Mrs. Jeanmard picked up her car, paid the $58.77 bill, and proceeded to drive home by way of U.S. Highway 167. Approximately ten miles north of Lafayette, Louisiana, the hood to her car Hew up and backwards, striking her windshield, causing her to lose control of the automobile, which left the highway and collided into the adjacent embankment.
As a result of the accident Mrs. Jeanmard received primarily neck and shoulder injuries.
After trial, the trial court held that defendants were liable for not properly latching the hood and awarded the plaintiffs the following damages:
General Damages $20,000.00
Stipulated Medical 4,438.12
Future Medical 3,150.00
Vehicle Damage 100.00
$27,688.12
Plaintiffs’ motion for a new trial was denied. Plaintiffs appealed, presenting two issues:
(1) Whether the award for general damages was adequate; and
(2) Whether a new trial should be ordered on the question of quantum.
QUANTUM
As we review the facts to determine whether the trial court’s award was adequate we must apply the standards of appellate review as set forth in Reck v. Stevens, 373 So.2d 498 (La.1979), which stated as follows:

“We do re-emphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence.”

At the time of the accident, Mrs. Jeanmard was a sixty-seven year old, well educated, retired school teacher. She was very active in the International Federation of Home Economics. This required her to travel extensively to different countries to attend meetings. Her hobbies were playing golf with her husband, writing, sculpturing and gardening.
After the accident she went to her home in Yille Platte. The following day, September 19, 1978, she was taken to a hospital where she was seen by Dr. Edward Lyons. Dr. Lyons stated that she was disoriented due to hyperventilation. She was treated for four days and discharged from the hospital. On October 9, 1978, Mrs. Jeanmard saw Dr. Lyons again complaining of neck and shoulder pains. The physician prescribed medication. He noted that she exhibited no signs of physical trauma. He saw her intermittently and referred her to Dr. Lee Leonard, an orthopedic surgeon.
This physician examined Mrs. Jeanmard in March 1980. He stated that she was 5 ft. 1½ in. tall and weighed 178 pounds. He diagnosed her problem as being a degenerative joint disease involving the neck and *579 right shoulder. He felt this condition was probably aggravated by the incident. Dr. Leonard stated that she had suffered 5% to 10% body impairment. He felt that she would improve if she had a disc operation at the C-5, C-6 level. This physician referred Mrs. Jeanmard to Dr. Abram Young, a neurosurgeon.
Dr. Young saw her first on April 18,1980. After examination he concluded that she had a nerve root compression in her neck either due to spondylytic disease, which is calcification, or acute changes relative to a disc herniation. He performed a myelo-gram in May 1980 which showed a defect at the C-6, C-6 level. He recommended surgery to alleviate this problem. He stated that Mrs. Jeanmard refused the surgery for two reasons. First, she stated that she had more good days (without pain) than bad ones and, as long as this situation existed, she didn’t want to undergo surgery. Secondly she had a trip planned to go to Manila, in the Phillipine Islands, for a meeting of the delegates of the International Federation of Home Economics. Surgery to be performed in the summer of 1980 would interfere with this activity. Dr. Young classified her pain as mild to moderate and this would continue intermittently until alleviated by surgery.
Mrs. Jeanmard was also seen by Dr. Stephen Goldware, a neurosurgeon, for evaluation. This examination took place on October 21,1980. Dr. Goldware’s diagnosis was substantially the same as that of Dr. Young’s. He felt that she suffered a 5% impairment of the body, due principally to the pinched nerve of the neck.
Dr. Goldware recommended surgery and estimated its cost as follows:
$1,750.00 for a single level anteroio cervical fusion, surgeon’s fee;
$600.00 for the operating room and supplies;
$100.00 for an internist examination; $600.00 for the hospital stay; and $100.00 for cervical collars.
Mrs. Jeanmard testified that her neck and shoulder condition interrupted or interfered with her golfing, sculpturing and gardening. She admitted, however, that it did not interfere with her activities with the International Federation of Home Economics. She drove to Colorado after the accident. Also, she went to the Phillipines for a meeting in the summer of 1979.
Based upon the testimony of the physicians and other evidence the trial court awarded $20,000.00 general damages and $7,688.12 special damages, including future medical as testified to by Dr. Goldware.
Applying the standards of review heretofore set forth, we find no abuse of discretion in the trial court’s award of $20,000.00 for general damages.
MOTION FOR A NEW TRIAL
Mr. and Mrs. Jeanmard contend that the trial court erred by failing to grant a new trial due to post-trial surgery of Mrs. Jeanmard. In support of their motion the Jeanmards attach the deposition of Dr. Young and his fees charged for surgery. The Jeanmards contend that the trial court should grant a new trial to include the testimony concerning the surgery that was performed after trial. It is their position that such testimony would serve as to reflect an increase in the damages. The trial court denied the motion without reasons.
The trial court, in its award of $27,688.12, considered the fact that future surgery would be necessary. This fact was set forth in the trial court’s reasons for judgment. We have examined the motion and its attachment and we find that the trial court did not abuse its discretion in denying the motion for a new trial.
For these reasons, the judgment of the trial court is affirmed. The appellants, Mr. and Mrs. Jeanmard, are to pay the costs of this appeal.
AFFIRMED.